# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4536 | **DATE** | 11/8/2002 |
| **CASE TITLE** | Premier Transport, LTD. vs. Nextel Communications, Inc., *et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Defendants' motion to dismiss Counts IV and V of the first amended complaint [doc. # 16] is granted. Plaintiff's motion for leave to file a second amended complaint [doc. # 24] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | NOV 12 2002 date docketed |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | docketing deputy initials |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | 11/8/2002 date mailed notice |
| JJK courtroom deputy's initials | | JJK mailing deputy initials |

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

PREMIER TRANSPORT, LTD., d/b/a )
PREMIER MESSENGER, LTD., an )
Illinois corporation, )
)
    Plaintiff, )
) No. 02 C 4536
vs. )
) Magistrate Judge Schenkier
NEXTEL COMMUNICATIONS, INC., )
a Delaware corporation; and NEXTEL )
WEST CORP., a Delaware corporation. )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

This diversity lawsuit arises out of disputes concerning the contractual relationship between the parties (pursuant to which the defendants provided plaintiff with wireless communication services) and the termination of that relationship in August or September 2001. In its first amended complaint, the plaintiff asserts claims of statutory fraud under Illinois law (Count I), common law fraud (Count II), and breach of contract (Count III). The defendants have answered those claims, and one of the defendants has filed a counterclaim seeking recovery for amounts allegedly due and owing by the plaintiff under the contractual agreements.

Presently before the Court are issues relating to two other claims asserted by plaintiff in the first amended complaint: tortious interference with contract (Count IV) and tortious interference with prospective economic advantage (Count V). In response to those two claims, the defendants have filed a motion to dismiss (doc. # 16). Plaintiff has chosen not to defend that adequacy of those claims as pled in the first amended complaint, but instead has filed a motion for leave to file a second amended complaint (doc. # 24), which attempts to address the shortcomings in the tortious



interference claims that defendants identified in their motion to dismiss. The defendants oppose the motion for leave to amend, on the ground – among others – that the proposed amendment is futile because it does not correct those shortcomings.

For the reasons set forth below, defendants' motion to dismiss Counts IV and V of the first amended complaint is GRANTED; plaintiff's motion for leave to file a second amended complaint is DENIED.[1]

## I.

We begin with a discussion of the elements required under Illinois law to assert the tortious interference claims at issue here. The requisite elements for a claim of tortious interference with an existing contract are: "(1) the existence of a valid enforceable contract between the plaintiff and another; (2) the defendant's awareness of the relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract which causes a subsequent breach by the other, and (4) damages." *Israel v. National Canada Corp.*, 658 N.E.2d 1184, 1192 (1st Dist. 1995) (citations omitted); *see also D & K Properties Crystal Lake v. The Mutual Life Ins. Co. of New York*, No. 95 C 4974, 1996 WL 224517, at *8 (N.D. Ill., May 1, 1996); *HPI Healthcare Services, Inc. v. Mount Vernon Hospital, Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) (noting that while the Illinois Supreme Court "has never explicitly set out the elements of the tort of intentional interference with existing contract rights," these elements are "generally recognized in Illinois"). The necessary elements for a claim of tortious interference with prospective business (or economic) advantage are as follows: "(1) [a] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant

---

[1]Pursuant to the consent of the parties, as authorized by 28 U.S.C. § 636(c) (doc. ## 13-14), on August 21, 2002, the case was reassigned to this Court for all proceedings, including the entry of final judgment (doc. # 15).

2

that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *OnTap Premium Quality Waters, Inc. v. Bank of Northern Illinois*, 634 N.E.2d 425, 432 (2d Dist. 1994) (citing *Felhauer v. City of Geneva*, 568 N.E.2d 870 (Ill. 1991)). *See also DuPage Aviation Corp. v. DuPage Airport Auth.*, 594 N.E.2d 1334, 1340 (2d Dist. 1992) (citations omitted); *Unique Envelope Corp. v. GS America, Inc.*, No. 00 C 7811, 2002 WL 598511, at *4 (N.D. Ill., April 18, 2002) (citations omitted); *Salem Brothers, Inc. v. Corcoran*, No. 99 C 8228, 2000 WL 1050589, at *5 (N.D. Ill., July 28, 2000).

In addition, there is a long line of cases -- both from the Illinois appellate courts and from federal courts within this district -- explaining that the element of interference requires more than mere allegations of conduct between the plaintiff and defendant. Rather, a plaintiff must assert that there has been interference as a result of conduct directed by the defendant toward a third party. This is true both with respect to the tort of intentional interference with an existing contract, *see, e.g., Israel*, 658 N.E.2d at 1193 ("[i]nducement to breach a contract involves acts aimed at parties other than a plaintiff"); *Silk v. City of Chicago*, No. 95 C 0143, 1997 WL 790598, at *19 (N.D. Ill., Dec. 17, 1997) ("the tortious interference allegedly committed by the defendant must be directed toward a third party – not the plaintiff"); *D & K Properties*, 1996 WL 224517, at *8 ("to state a claim for tortious interference, 'the acts that form the basis of tortious interference must be directed at parties other than plaintiff'") (quoting *Kraft Chemicals Co. v. Illinois Bell Telephone Co.*, 608 N.E.2d 243, 247 (1st Dist. 1992), and the tort of interference with prospective economic advantage. *See, e.g., OnTap Premium Quality Waters*, 634 N.E.2d at 432 ("Illinois courts require that a tortious interference claim be supported by allegations that the defendant acted toward a third party"); *DuPage Aviation Corp.*, 594 N.E.2d at 1341 (same); *Salem Brothers, Inc.*, 2000 WL 1050589, at *5

3

(same); *Unique Envelope Corp.*, 2002 WL 598511, at *4 (to state a claim, a plaintiff must allege "action by the interfering party directed toward the party with whom the plaintiff expects to do business").

Plaintiff has not disputed that these are the required elements to state a claim under Illinois law for tortious interference with contract and tortious interference with prospective economic advantage. Nor, in light of the foregoing case law, do we believe that the plaintiff credibly could do so.[2] Accordingly, it is with these elements in mind that we consider both the motion to dismiss these claims as they currently are pled in the first amended complaint, and plaintiff's motion to amend those claims in a second amended complaint.

## II.

We first consider the tortious interference claims as they are pled in the first amended complaint. In their motion to dismiss, defendants argue that the tortious interference with contract claim (Count IV) is defective because it fails to allege conduct by the defendants directed toward a third party; fails to allege that any third party breached a contract; and fails to show the defendants' termination of plaintiff's contract was "unjustified" (Defs.' Motion at 2-3). Defendants claim that the tortious interference with prospective economic advantage claim (Count V) is defective because the plaintiff (again) fails to allege any interfering conduct by the defendants directed toward third

---

[2] We recognize that the Illinois Supreme Court has not addressed whether the element of intentional interference by the defendant requires that the interfering conduct be directed toward a third party. However, "[w]here the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate Courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997). In this case, the Illinois appellate decisions squarely, and uniformly, have held that conduct directed toward the third party is required to prove intentional interference. Plaintiff has not offered any argument – much less any "persuasive indications" – that the Supreme Court would rule differently. Indeed, to allow a tortious interference claim to proceed based merely on the conduct between the plaintiff and defendant could have the result of dramatically expanding these causes of action, as it would allow a plaintiff to plead tortious interference whenever (as might often be the case) the action by the defendant toward the plaintiff has some "ripple affect" on third parties. We see no basis to believe that the Illinois Supreme Court would adopt such an approach.

4

parties; that plaintiff failed to sufficiently allege the expectancy of entering into a valid business relationship; and that the plaintiff has failed to sufficiently allege that the termination by the defendants of service was unjustified (*Id.* at 4-5).

In considering a motion to dismiss, the Court is mindful that Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this notice pleading approach, "[t]he only function the pleadings must serve is to give notice of the claim; the development of legal theories and the correlation of facts to theory come later in the process." *International Marketing, Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 733 (7th Cir. 1999). Absent heightened pleading requirements that do not apply here, "plaintiff can plead conclusions as long as those conclusions provide defendant with minimal notice of the claim." *Liberty Mutual Fire Ins., Co. v. Reimer Exp. Enterprises, Ltd.*, 82 F. Supp. 2d 887, 892 (N.D. Ill. 2000).

However, even under this liberal pleading standard, a complaint must make allegations identify each of the essential elements of the cause of action. *Lucien v. Preiner*, 967 2d 1166, 1168 (7th Cir. 1992). Here, we agree with the defendants that Counts IV and V of the first amended complaint fail to meet that minimal threshold. Neither count asserts that the defendants engaged in any conduct directed toward third parties. Based on the foregoing case law, that alone is fatal to the tortious interference claims asserted in the first amended complaint. And the plaintiff apparently agrees, as evidenced by the fact that plaintiff seeks to amend those counts rather than defend their sufficiency. But with or without plaintiff's concession on this point, the Court finds that Counts IV and V as they are pled in the first amended complaint fail to state a claim for relief. Accordingly, defendants' motion to dismiss those claims is granted.

## III.

The question remains whether plaintiff should be allowed to amend the first amended complaint to correct the shortcomings in the tortious interference claims. Federal Rule of Civil Procedure 15(a) provides that where, as here, a party already has amended the complaint once, a subsequent amendment is permitted "only by leave of Court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "This liberal policy of granting amendments is based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations." *Gregg Communications Systems, Inc. v. American Telephone and Telegraph Co.*, 98 F.R.D. 715, 720 (N.D. Ill. 1983); *see also Foman v. Davis*, 371 U.S. 178, 181 (1962) (decisions on the merits should be avoided on the basis of "mere technicalities"); WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1471 at 505-06 (1990 Ed.) ("the rule's purpose is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities").

But justice does not require a court to allow an amendment when there are good and compelling reasons to decline to do so. And, the Supreme Court in *Foman* identified the types of reasons that would warrant the denial of leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182. Whether an amendment should be granted is a matter committed to the sound discretion of the trial court. *Foman*, 371 U.S. at 182; *J. D. Marshall International, Inc. v. Redstart, Inc.*, 935 F.2d 815, 819 (7th Cir. 1991).

In opposing plaintiff's requested amendment, the defendants urge that several of these justifications for denial of the proposed amendment apply here: repeated failure to cure an alleged pleading deficiency, bad faith, and futility (Defs.' Mem. at 5-9). Because we find the futility argument dispositive here, we focus on that point and need not address the other arguments.

In the proposed second amended complaint, plaintiff attempts to plead the element of interference by the defendants through conduct directed at third parties by asserting that defendants "knew that elimination of wireless communication service would result in breaches of these agreements by the third parties with Premier" (Proposed Second Amended Complaint, Count IV, ¶ 64), and because "Nextel knew that the termination of wireless communication service would result in the inability of Premier to nurture and develop . . . business expectancies" (*Id.*,Count V, ¶ 71). These new allegations are insufficient to salvage the tortious interference claims. As was the case with the first amended complaint, the only *conduct* by defendant that is challenged in the proposed second amended complaint is conduct between the defendants and the plaintiff: alleged improper billing, alleged promises that were not kept, and alleged improper termination of the agreements. All that the proposed second amended complaint adds is the assertion that the defendants knew that their actions directed toward the plaintiff would have ramifications for plaintiff's relationships with others. However, the case law makes it clear that this sort of allegation is not enough to support a tortious interference claim. *See, e.g., OnTap Premium Quality Waters, Inc.*, 634 N.E.2d at 432 (affirmed dismissal of tortious interference claim, noting that "[p]laintiff's allegations merely establish that defendants' action in failing or refusing to communicate arose from the direct relationship between plaintiff and defendant"); *Silk*, 1997 WL 790598, *19 (dismissing tortious interference claims, explaining that "'[t]he acts that form the basis of tortious interference must be

directed at parties other than the plaintiff'") (quoting *Continental Mobile Telephone Co., Inc. v. Chicago SMSA Ltd. Partnership*, 587 N.E.2d 1169 (1st Dist. 1992); *D & K Properties*, 1996 WL 224517, *8 (explaining that a tortious interference claim was deficient where the plaintiff alleged that "acts had an *impact* on the tenants, not that the acts were *directed* at the tenants") (emphasis in original).

Given that plaintiff's proposed second amended complaint would not correct this fundamental deficiency in the tortious interference claims, allowing the plaintiff to file a complaint would be an exercise in futility. In these circumstances, the Court exercises its discretion under Rule 15(a) to deny plaintiff's motion for leave to file a second amended complaint.[3]

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Counts IV and V of the first amended complaint (doc. # 16) is GRANTED; plaintiff's motion for leave to file a second amended complaint (doc. # 24) is DENIED.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: November 8, 2002

---

[3] As a result of this ruling, the Court has no occasion to address whether any of the other proposed revisions to the tortious interference claims would cure the defects identified in defendants' motion to dismiss. However, the Court notes with some concern the apparent ease with which the plaintiff has attempted to change (without explanation) its allegation in the first amended complaint that the defendants' conduct "caused the breach by Premier of its contracts" with third parties (First Amended Complaint, Count IV ¶ 64) to the allegation that it was the third parties – and not Premier – that breached the agreements (Proposed Second Amended Complaint, Count IV, ¶ 64).

8