# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4536 | **DATE** | 5/30/2003 |
| **CASE TITLE** | Premier Transport, Ltd. vs. Nextel Communications, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. Nextel's Rule 16 motion to dismiss the consequential damage allegations in Premier's complaint, which contains only Counts I-III, is GRANTED [doc. # 28]. Premier will not be permitted to assert any such damage claims with respect to those claims at trial.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUN 0 2 2003 | |
| ✓ | Notified counsel by telephone. | date docketed | 39 |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 5/30/2003 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| | courtroom JJK deputy's initials | Date/time received in central Clerk's Office | JJK mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PREMIER TRANSPORT, LTD., d/b/a<br>PREMIER MESSENGER, LTD.,<br>an Illinois corporation, | )<br>)<br>)<br>) | DOCKETED<br><br>JUN 0 2 2003 |
| Plaintiff, | )<br>) | |
| vs. | ) | No. 02 C 4536 |
| NEXTEL COMMUNICATIONS, INC.,<br>a Delaware corporation; and NEXTEL<br>WEST CORP., a Delaware corporation, | )<br>)<br>)<br>) | Magistrate Judge Schenkier |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

In this diversity action, the plaintiff, Premier Transport, Ltd. ("Premier"), asserts claims under Illinois law for statutory fraud (Count I), common law fraud (Count II), and breach of contract (Count III) arising out of disputes between Premier and the defendants (which we refer to collectively as "Nextel") in connection with defendants' provision to Premier of wireless communication services. In an earlier opinion, this Court dismissed additional claims that Premier had asserted alleging tortious interference with contract and with prospective economic advantage, and denied Premier's motion to amend those claims. *Premier Transport, Ltd. v. Nextel Communications, Inc.*, No. 02 C 4536, 2002 WL 31507167 (N.D. Ill. Nov. 12, 2002).

Now pending before the Court is Nextel's motion, pursuant to Federal Rule of Civil Procedure 16(c)(1), to further narrow the issues in the case by barring Premier from seeking consequential damages or economic losses (doc. #28). Nextel offers two bases for its motion: (1)

---

[1]Pursuant to the consent of the parties, as authorized by 28 U.S.C. § 636(c)(doc. ## 13-14), on August 21, 2002 the case was assigned to this Court for all proceedings, including the entry of final judgment (doc. #15).

there are no allegations in the claims that remain in this case (Counts I-III)for which consequential damages can be awarded; and (2) in any event, Premier signed the underlying agreements between the parties, which all contained exculpatory clauses that bar Premier from asserting any right to recover consequential damages and economic losses against Nextel. For the reasons that follow, the Court grants Nextel's Rule 16 motion to bar Premier from asserting any claims for consequential damages based on Counts I-III.

## I.

We begin by summarizing the claims for relief that Premier asserts. In Count I of the First Amended Complaint, Premier alleges that Nextel engaged in conduct that violates the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1 *et. seq.* (Compl. ¶ 47). Specifically, Premier complains that Nextel knowingly deceived Premier regarding the costs and charges involved in the sale of certain telephone services and "intended to induce Premier to rely on Nextel's deception." In Count II, Premier alleges that Nextel engaged in common law fraud. Specifically, Premier alleges that Nextel "made several misrepresentations to induce Premier to purchase equipment on a communication system that Nextel knew was going to be obsolete" and "represented to Premier that it would be charged a reduced fee for deactivated wireless telephones" (Compl. ¶ 53), even though it later continued to charge Premier the full rate for such telephones and services, failed to credit Premier's account (as it represented it would do), and made numerous other misrepresentations to Premier to "induce Premier to continue its relationship with Nextel" and to "continue to purchase wireless telephones and communication service from Nextel" (Compl. ¶¶ 53-54). Finally, in Count III, Premier alleges that Nextel breached its contract with Premier when it charged "Premier for different services and fees than were agreed to by the [p]arties" (Compl. ¶ 61).

Each of these three counts incorporate by reference the first 40 paragraphs of the complaint. One of those paragraphs alleges that Nextel terminated Premier's service, which caused Premier to expend some $80,000 to implement a new wireless communication, and that Premier thereafter lost existing and prospective clients because the replacement system was inferior to that offered by Nextel (Compl. ¶ 40). In discovery, Premier disclosed that it claims more than $800,000 in damages for the lost business and some $168,000 for the cost of establishing a service to replace that offered by Nextel (Premier's Second Supplemental Objections and Answers to Defendants' First Set of Interrogatories, No. 5). By contrast, the total amount of other damages that Nextel based on Nextel's alleged pre-termination conduct is about $74,000 (*Id.*).[2]

## II.

Rule 16(c)(1) allows a district court to "take appropriate action, with respect to the formulation and simplification of the issues . . . ." Fed.R.Civ.P. 16(c)(1). The Advisory Committee Notes to Rule 16 further explain:

> The reference in Rule 16(c)(1) to "formulation" is intended to clarify and confirm the court's power to identify litigable issues. It has been added in the hope of promoting efficiency and conserving judicial resources by identifying the real issues prior to trial, thereby saving time and expense for everyone. The notion is emphasized by expressly authorizing the elimination of frivolous claims or defenses at a pretrial conference. There is no reason to require that this await a formal motion for summary judgment. . . .

Fed.R.Civ.P.16(c)(1), Advisory Committee Notes, Discussion, Subdivision (c) (citations omitted).

As Premier correctly notes (Premier's Resp. at 4, n.1), the present Rule 16 motion is like a motion for partial summary judgment because it seeks dismissal of Premier's consequential damages

---

[2] This number is derived by adding the damages amounts claimed by Premier in subparts A-E and G of this interrogatory response, all of which relate to conduct occurring before or at the time of termination. The damages attributed to cost of replacement service and lost business are set forth in subpart F of the interrogatory response.

3

claim for Counts I-III. And, in fact, Premier has treated the motion as such, citing the standards applicable to summary judgment motions and offering extrinsic evidence to show why there are material facts that are in genuine dispute on the issue of consequential damages. The discovery relevant to consideration of this motion has been completed, and the parties have had an opportunity to submit all evidence and arguments within their disposal on this issue. The Court therefore will treat the present Rule 16 motion as a motion for partial summary judgment under Rule 56, even though the local rules governing the brief of summary judgment motions rules have not been strictly complied with in this particular instance.[3]

Rule 56 requires that summary judgment be entered "only when the pleadings, depositions, affidavits, and admissions filed in the case 'show that . . . there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is evidence that would support the entry of verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249 (1986). To determine if such material facts are genuinely disputed, the reviewing court must view the evidence in the light most favorable to the non-moving party and resolve all doubts in that party's favor. *Id.* at 245-50. The moving party has the burden of identifying the material facts which are without genuine dispute and support the entry of summary judgment in the moving party's favor. *Celotex Corp. v. Catrett,*

---

[3]All non-expert discovery in this case was to be completed by April 15, 2003 (*see* doc. # 23). By agreement of the parties, the Court stayed discovery on consequential damages (other than what already was disclosed in written discovery) pending ruling on this motion (doc. # 30). However, that was the only adjustment to the discovery schedule permitted by the Court; all other non-expert discovery – including any that would bear on this motion – was due to be completed by April 15, 2003. And, Premier has not contended that it is unable to adequately respond to this motion because additional discovery is required. *See* Fed.R.Civ.P. 56. Thus, we consider the merits of Nextel's motion.

477 U.S. 317, 323 (1986). The non-moving party, for its part, must identify which material facts raise genuine issues of dispute. *Id.* at 324.

### III.

Here, the only issue presented is whether based on Counts I, II or III of the First Amended Complaint, Premier has a triable claim for consequential damages. As indicated above, Nextel argues that the Court must dismiss Premier's consequential damage claims from this case because: (1) there is an exculpatory clause that bars consequential damages in the written subscriber agreements between the parties; and (2) irrespective of any exculpatory clause, Counts I-III cannot support a claim for post-termination consequential damages, since those counts "relate only to alleged improper charges for wireless services" and do not assert as fraudulent or a breach of contract the termination of service (Nextel Mot. at 6, ¶ 17).

In response, Premier uses most of its ink to attack the exculpatory clause. Premier claims that the exculpatory clause is unenforceable for several reasons: (1) Nextel allegedly is a monopoly; (2) even if it is not a monopoly, Nextel is a common carrier; and (3) public policy augers against enforcement of the exculpatory clause in this case. Premier then briefly, in two short paragraphs not even a page long, addresses Nextel's argument that Count I-III fail to allege any claim for which consequential damages can be recovered. Premier's only rejoinder to Nextel on this point is that "Nextel's termination of service was directly caused by Nextel's fraudulent charges" (Premier's Resp. at 9). In support of this argument, Premier cites to paragraph 40 of the complaint (incorporated into each of the three counts), which alleges that the new wireless communication

5

system that Premier had to obtain after Nextel's termination cost Premier money to secure and, because it was inferior to Nextel's system, "has resulted in the loss of clients, the inability to market to new clients and a reduction in staff" (*Id.* (citing Compl. ¶¶ 40, 41, 49, 55)).

The Court first will address Nextel's argument concerning the allegations of the complaint, since we find that argument to be dispositive of the consequential damages claims.

### A.

Counts I-III all attack conduct related to what Premier claims to be improper charges for services (Compl. ¶¶ 43-44, 50-51, 58). The consequential damages claimed by Premier, however, derive not from allegedly improper charges but instead from Nextel's termination of service, which Counts I-III do not challenge as wrongful. Premier nonetheless asserts that its alleged post-termination damages were "directly caused by Nextel's fraudulent charges" (Premier's Resp. at 9). This argument is premised on the following chain of reasoning: that the improper imposition of charges led to Nextel seeking payments from Premier that Premier did not owe; that Premier refused to pay the charges because they were improper; that Nextel terminated service because of Nextel's failure to pay; that the terminated service resulted in consequential damages to Premier (in the form of costs to acquire replacement service and lost business); and that because the termination of service stemmed from the failure to pay allegedly improper charges, any consequential damages resulting from the termination of service were "directly caused" by the alleged improper charges.

To the extent that Premier seeks to argue that those damages therefore were "proximately caused" by the alleged improper charges, that argument confuses cause in fact with proximate cause. Cause in fact (or "but for" causation) is "the cause without which the event would not have occurred." BLACK'S LAW DICTIONARY, at 212 (7th ed. 1999). By contrast, proximate cause is "a

6

cause that directly produces an event and without which the event would not have occurred." *Id.*, at 213. Thus, "proximate cause consists of two distinct legal elements: cause in fact and legal cause." *Evans v. Shannon*, 776 N.E.2d 1184, 1190 (Ill. 2002). Cause in fact alone is not proximate cause – and, it is proximate cause that is necessary for an award of consequential damages. As the Illinois Supreme Court stated in *Martin v. Heinhold Commodities, Inc.* 643 N.E.2d 734, 746 (Ill. 1994):

> It is a fundamental principle applicable alike to breaches of contract and torts, that in order to found a right of action there must be a wrongful act done and a loss resulting from that wrongful act; the wrongful act must be the act of the defendant, and the injury suffered by the plaintiff must be the natural and not merely a remote consequence of the defendant's act.

In this case, while it may be true that the alleged imposition of improper charges were in the chain of "causation in fact" that ended with the claimed consequential damages, those damages are too remote from the allegedly wrongful imposition of charges to support a finding of proximate cause. There is no claim here that the termination of service was itself wrongful, and it is the termination of service that directly caused any damages Premier might claim for the cost of replacement service and lost business. We see no credible basis to say that damages directly resulting from an intervening lawful act (the termination) also directly resulted from actions that preceded the lawful termination. Accordingly, the Court finds that Premier's consequential damages claims must be dismissed pursuant to Rule 16 and Rule 56, because there is no genuine issue of material fact that would preclude summary judgment on that issue in favor of Nextel.

### B.

That said, the Court will address Nextel's alternative argument that the exculpatory clauses bar Premier's consequential damages claims. The exculpatory clause in the subscriber agreements

7

between Premier and Nextel state, in relevant part, as follows:

> ...IN NO EVENT SHALL COMPANY BE LIABLE FOR CONSEQUENTIAL, SPECIAL, OR INCIDENTAL DAMAGES, WHETHER OR NOT OCCASIONED BY COMPANY NEGLIGENCE . . . INCLUDING, WITHOUT LIMITATION, LIABILITY FOR ANY LOSS OR DAMAGE RESULTING FROM THE INTERRUPTION OR FAILURE IN THE OPERATION OF ANY EQUIPMENT SOLD OR OTHERWISE PROVIDED HEREUNDER....[4]

In Illinois, exculpatory clauses generally are enforced on the grounds that competent parties must be free to make and stand by their own agreements and "to contractually allocate business risks as they see fit." *McClure Engineering Assocs., Inc. v. Reuben H. Donnelley Corp.*, 447 N.E.2d 400, 402-03 (Ill. 1983). Courts in this state have not overturned exculpatory clauses unless they are unconscionable (*e.g.*, the product of unreasonably advantageous bargaining power such as that conferred by a monopoly position), *see id.*, or in violation of some other public policy (*e.g.*, a special relationship of a semi-public nature exists between the parties, such as those involving common carriers). *See First Financial Ins. Co. v. Purolator Sec., Inc.*, 388 N.E.2d 17, 21 (Ill. App. 1st Dist. 1979) (citing Checkley v. Ill. Central R.R. Co., 100 N.E. 142 (Ill. 1913)). *See also North River Ins. Co. v. Jones*, 655 N.E.2d 987, 992 (Ill. App. 1st Dist. 1995). The party seeking to avoid the effect of the exculpatory clause carries the burden of proving it should not be enforced. *See Reuben H.*

---

[4] Premier complains that the copies of the subscriber agreements attached to Nextel's motion are "very difficult if not impossible, to read," and asserts that the Court should not assume that the several subscriber agreements in issue all have the same language (Premier Resp. at 6 n.2). However, no such "assumptions" are necessary. Premier has admitted in discovery that the subscriber agreement attached to Nextel's motion are true and correct copies of the ones Premier signed (Nextel Mot., at ¶ 18). During the pendency of the motion, Nextel provided the Court (and Premier) with an enlarged, very legible copy of a sample of one of the agreements, which contained the exculpatory clause claimed by Nextel. Premier has not suggested that this enlargement fails to accurately reflect the exculpatory clauses that are in the subscriber agreements. In these circumstances, it is not enough for Premier merely to say that the Court should not assume that the exculpatory clause is not in all the agreements. Premier must offer evidence to create a genuine dispute about what is in the agreements – which Premier readily should have been able to do (if there was anything to genuinely dispute), since Premier signed the agreements and attached a copy of one to the complaint (*see* Compl., ¶ 8 and Ex. A). Accordingly, Premier has failed to create a genuine issue of material fact on whether the subscriber agreements contain exculpatory clauses barring consequential damages.

*Donnelley Corp. v. Krasny Supply Co.*, 592 N.E.2d 8, 11 (Ill. App. 1st Dist. 1991) (party arguing that exculpatory clause was unconscionable "has the burden at trial to produce sufficient evidence of unconscionability"). We will address the unconscionability/monopoly argument first, and then turn to the public policy/common carrier argument.

1.

Premier's first argument attacking enforceability of the exculpatory clause is based on the exception of unconscionability, recognized in the case law to embrace arguments of unequal bargaining power and monopoly status. *See, e.g., First Financial Ins. Co. v. Purolator Sec., Inc.*, 388 N.E.2d 17, 21-22 (Ill. App. 1st Dist. 1979). "An unconscionable bargain has been defined as one which no [person] in his [or her] senses, not under delusion, would make, on the one hand, and which no fair and honest [person] would accept on the other. . . ." *Id.* at 22 (citations omitted). "The term unconscionability encompasses an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party . . . the unconscionability doctrine has been applied most often to prevent instances of commercial sharp practices by parties possessing superior bargaining power." *Id.*

Premier argues that its agreement to be bound by the exculpatory clause was unconscionable because Nextel holds a monopoly in the Direct Connect Wireless market, and thus Premier could not voluntarily refuse to agree to this clause if it wanted Nextel's services (Premier's Resp. at 3-4). In other words, Premier argues that because Nextel offers the only direct connect service of its kind and quality, it enjoys a superior bargaining position – so superior that the exculpatory clause in its subscriber agreements, the one that requires waiver of consequential damages, should be held invalid as unconscionable, because Nextel is a monopolist which leveraged its superior bargaining power

9

to extort an unreasonable concession from Premier.

Nextel demurs on this point, arguing that Premier has offered no evidence of Nextel's alleged monopoly position, and that there is actually evidence to the contrary offered by Nextel: namely, a report indicating that there is an "extremely active and competitive wireless communications industry" (Nextel Reply at 4 (citing Seventh Annual Report and Analysis of Competitive Market Conditions With Respect to Commercial Mobile Services)). In a supplement to its response, Premier has cited to certain deposition testimony concerning the uniqueness of Nextel's Direct Connect service. But, as Nextel correctly points out, the law recognizes that a unique product with a large chunk of the market does not by itself a monopoly make: "[a] common misconception has been that a patent or copyright, a high market share, or a unique product that competitors are not able to offer suffices to demonstrate market power." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 37 n.7 (1984).

Premier's monopolist (with unreasonable bargaining power) argument fails for lack of proof to support it. Premier has not offered any evidence to establish that Nextel possesses monopoly power. To establish an unconscionability defense to the exculpatory clause, Premier would not necessarily need to establish that a monopoly exists under the antitrust laws, because the unconscionability defense is essentially equitable. But, the assertion of monopoly status invites analogies to the factors used to identify an entity as a monopoly. To make that analogy, Premier would need to provide evidence of the relevant market for communications services, comparable service alternatives within that market, and Nextel's competitive position in that market. *See, e.g., Brunson Communications, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 568-69 (E.D. Pa. 2002) (listing necessary factors to establish monopoly under Section 2 of Sherman Act; distinguishing

cases where there is simply "growth or development as a consequence of a superior product, business acumen, or historic accident" and/or where defendant is simply the sole provider of a service without other evidence regarding market share and competition; court also characterizes claim that use of economic monopoly power to breach existing contracts as an antitrust claim). *See generally JamSports and Entertainment, LLC v. Paradama Prods., Inc.*, No. 02 C 2298, 2003 WL 1873563, \*\* 4-8 (N.D. Ill. 2003) (discussing factors necessary to state a claim for monopolization under Section 2 of Sherman Act). *Cf. Northlake Marketing & Supply, Inc. v. Glaverbel S.A.*, 861 F. Supp. 653 (N.D. Ill. 1994) (granting summary judgment on alleged antitrust violations where plaintiff failed to present sufficient information to assess defendant's market power). A bare, unsupported assertion of "monopoly" is insufficient to establish a genuine issue of material fact. *See McClure Engineering Assoc., Inc. v. Reuben H. Donnelley Corp.*, 95 Ill. 2d 68, 73-74 (1983) (rejecting plaintiff's argument that an exculpatory clause was unenforceable due to an unequal bargaining position based on defendant's alleged monopoly status, unless "[t]he actual bargaining position of these parties . . . is unclear").

The Court finds that Premier has failed to supply evidence sufficient to create a genuine issue of material fact on the question of Nextel's monopoly status. Thus, the Court finds that Premier has failed to carry its burden of persuading the Court not to enforce the exculpatory clause on the grounds of unconscionability and/or monopoly (unreasonable bargaining position).

2.

As for the public policy/common carrier argument, Illinois law recognizes an exception to the general rule that exculpatory clauses are enforceable when a common carrier is involved (due to a special social relationship of semi-public nature). However, Premier has failed to offer evidence

to show that Nextel is a "communications common carrier" within the meaning of that exception. And, even if Premier had overcome that evidentiary defect, we note that the Illinois Supreme Court has upheld an exculpatory clause against land-based telephone services in *Illinois Bell Switching Station Litigation,* 641 N.E.2d 440, 445 (Ill. 1994) (upholding exculpatory clause included within tariffs of traditional, land-based telephone company). Premier has not offered (and we are not aware of) any case law in which an Illinois court has refused to enforce an exculpatory clause on behalf of a "communications common carrier." Nor has Premier explained why the *Illinois Bell Switching* decision would not apply to wireless communication services. Thus, even if Nextel were to fall within the category of a communications common carrier, Premier's argument would fail.[5]

## CONCLUSION

Accordingly, the Court finds that Nextel's Rule 16 motion to dismiss the consequential damage allegations in Premier's complaint, which contains only Counts I-III, is GRANTED (doc. # 28). Premier will not be permitted to assert any such damage claims with respect to those claims at trial.

ENTER:

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

Date: May 30, 2003

---

[5] We note that any other public policy arguments that thread their way through the cases cited by Premier (*e.g., First Financial Ins. Co. v. Purolator Security, Inc.,* 388 N.E.2d 17, 22 (Ill. App. 1st Dist. 1979) and *Pick Fisheries, Inc. v. Burns Electronic Security Services, Inc.,* 342 N.E.2d 105, 107 (Ill. App. 1st Dist. 1976)), involve cases where courts *rejected* a plaintiff's attempt to avoid a contractual limitation of liability on the basis of public policy because the parties engaged in arms-length transactions and were commercial entities presumed to know how to make their own bargains (Premier's Resp. at 6-7). These cases offer no comfort to Premier.